Eduardo Díaz, Plaintiff and Appellant, *v.* Julio Viejo Felíu, Defendant and Appellee.

No. 7784. Argued May 10, 1939.—Decided May 18, 1939.

*F. González Fagundo,* for appellant; *R. Díaz Collazo* and *G. Rivera Cestero,* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

The complaint in this case was filed originally in the District Court of Humacao, and removed to the District Court of Bayamón.

The complainant alleged that on April 24, 1937, he sold to the defendant 68 bundles of leaf tobacco, weighing 87 quin-

tals and 22 pounds, for the amount of $18 for each quintal of the class known as "center and crown" (*medio y corona*), and $12 a quintal for the class called "pickings" (*rezago*), all of which amounted to $1,467.42. That said tobacco was delivered in Caguas where defendant took it to his warehouses in Bayamón. That on said same date, to wit, April 24, 1937, the defendant issued and delivered a check to complainant for the aforementioned sum. That the complainant could not cash said check because the defendant ordered the bank to withhold payment. The complainant finally alleged that although repeatedly requested so to do, the defendant refused to pay him the aforesaid amount.

To this complaint, which was duly verified, the defendant answered, also under oath, substantially as follows:

He accepted the contract as alleged by the complaint but he alleged that of the 68 bundles or packages of tobacco, 19 were not of the quality purchased but of a tobacco of an inferior class than the one contracted for. The defendant accepted the fact that he had withheld payment of the check but alleged that later he issued another one in favor of the complainant for the amount of $990.96, which was the price corresponding to the tobacco delivered to him of the quality contracted for. Answering the third paragraph of the complaint, the defendant denied that he had been requested to pay and alleged on the contrary the payment of the aforementioned $990.96. And finally he requested judgment dismissing the complaint and awarding costs and attorneys' fees.

The trial was had on the 23d of March of last year and on the following April 26th the judgment appealed from dismissing the complaint and awarding costs was rendered.

The complainant-appellant alleges that the lower court committed two errors, to wit:

"*First.* The court erred in admitting evidence offered by the defendant which contradicted the material facts of the complaint and in allowing said defendant to prove what they call special defenses.

"*Second.* The court committed a serious error in the weighing of the evidence and in dismissing the complaint."

The mere statement of the first alleged error shows the confusion of the competent attorney who filed the brief in this appeal. It will be enough to draw his attention to the provisions of Section 110 of the Code of Civil Procedure (1933 ed.), which in its relevant part reads:

"Section 110.—The answer of the defendant shall contain:

"1. A general or specific denial of the material allegations of the complaint *controverted by the defendant.*

"2. A statement *of any new matter constituting a defense or counterclaim. . .*" (Italics ours.)

As the defendant was in agreement with the essential facts of the sworn complaint, he accepted them; but this did not deprive him from alleging and proving matter involving a defense to the complaint without denying the truth of said facts, or that is, that after he received and paid for the tobacco, he discovered that a part of the same was not in accordance with the stipulations of the contract, for which reason he ordered payment to be withheld of the check which he had sent to the complainant when he did not know of said defect; that he later paid him the amount corresponding to that part of the tobacco which was according to the conditions stipulated and returned that part which was not accepted.

Section 114 of the same code also authorizes the defendant to allege in his answer as many defenses and denials as he may have.

The manner of pleading adopted by the defendant and upheld by the lower court is what is called in Civil Procedure "confession and avoidance," or, that is, that he admits the existence of a fact but immediately thereafter alleges other facts that the complainant did not allege and which destroy the allegations of the complaint. For study of this point see the case of *González* v. *González et al.,* 35 P.R.R. 642, and

21 R.C.L. 546, section 108, both cited in the brief of the appellee.

In our opinion the first error alleged by the appellant does not exist.

 The second and last of the alleged errors is directed against the weighing of the evidence. We have studied the evidence and we have no doubt whatsoever but that it upholds the conclusions of fact reached by the lower court. From the evidence it appears that the complainant and the defendant agreed upon the conditions of the contract of sale of leaf tobacco. The purchase price was stipulated as appears from the allegations of the complaint. That on April 19, 1937, the defendant sent his employee or agent, Félix López, to classify and receive the tobacco in question in the warehouses of the complainant. That in the afternoon of said day López classified, marked and packed 19 bundles with the approval of the complainant and which he accepted as of the superior quality stipulated in the contract, but that as he was not able to continue working the following two days because he had to go to other Wards of Caguas to receive other tobaccos, he agreed with the complainant to leave in the latter's warehouse and under his care the 19 bundles of tobacco which had already been accepted and agreed to return on the 22d to continue his work in the warehouse of the complainant. That he did this and on the 22nd, in the afternoon, he took to the defendant's warehouse not only the 19 bundles classified and packed on April 19th but also those that he classified and received on the 22d, and finally took the rest of the tobacco purchased on April 23d. That after the tobacco arrived at the warehouse of the defendant, the latter, on April 24th, sent the complainant the check payment of which he immediately thereafter withheld when he discovered the defect in the quality of one part of the produce. That the tobacco in the 19 bundles left in the possession of the complainant on April 19th had been changed for an inferior kind and was not of the quality agreed upon, for which

reason the defendant notified the complainant that it was at his disposition and at the same time sent him a check for $990.96, which, according to the contract, was the value of the rest of the tobacco accepted. In our opinion, the defendant purchaser was not bound to anything more.

The appellant argues that the sale in this case may be a commercial sale as defined by Section 243 of the Code of Commerce (1932 ed.), and that in that case Section 254 of the same code would be applicable. The aforesaid Section 243 reads as follows:

"Section 243.—A purchase and sale of personal property for the purpose of resale, either in the form purchased or in a different form, for the purpose of deriving profit in the resale, shall be considered commercial."

We agree with the appellant that the contract in this case is a commercial contract since it appears from the evidence that the purchaser's business was the purchase and sale of tobacco, and although we could assume that the vendor is a farmer, there is no evidence whatsoever that the tobacco sold is a fruit or product of his crop, "or of the goods in which their rents are paid them," and it is not, therefore, included in the exception established in Section 244 of the same Code, which in its relevant part reads:

"Section 244.—The following can not be considered commercial:
"1. . . . . . . . . .
"2. Sales made by owners and by farmers or cattlemen *of the fruits or products of their crops* or cattle, or of the goods in which their rents are paid them."

To the same effect see the cases of *Loíza Sugar Co.* v. *Baquero & Co.*, 29 P.R.R. 803, and *Freiría & Co.*, v. *Cortés Brothers & Co.*, 32 P.R.R. 117.

But the fact that the contract is a commercial one does not bring it under the provisions of Section 254 of the Code of Commerce, 1932 ed., (336 of the Spanish Code), which reads:

"Section 254.—A purchaser who, at the time of receiving the merchandise carefully examines the same, shall have no right of action against the vendor, alleging a defect in the quantity or quality of the merchandise.

"A purchaser shall have a right of action against a vendor for defects in the quantity or quality of merchandise received in bales or packages, provided he brings his action within the four days following its receipt, and that the average is not due to accident or to the nature of the merchandise or to fraud.

"In such cases the purchaser may choose between the rescission of the contract or its fulfilment in accordance with what has been agreed upon, but always with the payment of the damages he may have suffered by reason of the defects or faults.

"The vendor may avoid this claim by demanding when making the delivery that the merchandise be examined fully by purchaser with regard to the quantity and quality thereof."

In this case the purchaser appellee has not filed any suit whatsoever against the vendor. It was the vendor who filed this suit against the purchaser, who undoubtedly had a right to defend himself in this suit for the collection of money by showing that the vendor has no right to force him to accept and pay for a merchandise which was not the one purchased.

In the case of *Bay Shoe Co.* v. *Muñiz,* 43 P.R.R. 336, the question is perfectly decided. We copy from the opinion in that case:

"R. Muñiz de León ordered a lot of shoes of the same style and quality as certain samples exhibited by a salesman of the Bay Shoe Company. When Muñiz examined the shoes at his first opportunity after delivery he found them to be of inferior quality and quite different in style from the samples shown him by the salesman. He immediately notified the Bay Shoe Company and the bank (through which that company had drawn upon him for the amount of the purchase price) that he would not pay the draft accepted by him at the time of delivery, as a prerequisite to such delivery and subject to the right of examination reserved by him. He also informed the shoe company and the bank as to his reasons for refusing to accept the shoes and placed them at the disposal of the seller.

"The shoe company brought suit on the accepted draft at maturity and Muñiz, after a general denial, set up, as an affirmative defense,

the facts above outlined. The court after a trial on the merits, rendered judgment for defendant.

"The first assignment is that the district court erred in holding that Section 336 of the Code of Commerce was not applicable and that it is optional with the purchaser to invoke the said Section and bring himself within its terms or not. . . .

". . . . . . . . . .

"As pointed out by the district judge in his statement of the case and opinion, the purchaser in the instant case never brought the action authorized by Section 336 of the Code of Commerce. We agree with the court below that the framers of the Code of Commerce, by fixing the period of four days within which to bring the action authorized by Section 336, did not intend to cut off the right of a purchaser to resist a demand for payment by showing facts amounting to a want or failure of consideration for an accepted draft, even though the same facts might have entitled him to relief in an action brought by him against the seller within four days after delivery of the merchandise. Section 336 can not be isolated and considered alone. It must be construed in connection with other provisions of the Code of Commerce, such as those contained in Sections 327 and 332. So construed it can not be held to operate as a statutory bar to the defense set up by the defendant in the instant case."

The lower court decided the conflict in the evidence and as it has not been shown that in so doing it was influenced by bias, prejudice or partiality or that it committed error in the weighing of the evidence, we should accept its conclusions of fact, to which it correctly applied the principles of law.

As the errors alleged by the appellant have not been committed, the appeal should be dismissed and the judgment appealed from affirmed.